IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

**MERLE AARON DEGROAT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Putnam County**
**No. 2015-CR-840    Gary McKenzie, Judge**

_____

**No. M2018-01490-CCA-R3-PC**
_____

Petitioner, Merle Aaron Degroat, appeals the denial of his post-conviction petition. Petitioner argues that he was denied effective assistance of counsel when his trial counsel failed to adequately consult with him prior to his guilty pleas to initiation of a process intended to result in the manufacture of methamphetamine and burglary of a motor vehicle. Following a review of the briefs of the parties and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael J. Rocco, Sparta, Tennessee (on appeal); Craig P. Fickling, District Public Defender; and Benjamin D. Marsee, Assistant Public Defender, (at trial) for the appellant, Merle Aaron Degroat.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret Gunn and Beth Willis, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The facts of this case as set forth by the State at Petitioner's guilty plea submission hearing are as follows:

These occurred on May the 7th of 2015. A Mr. Austin White had his vehicle broken into at the S & S Truck Wash, at 1780 Southside Drive. The police responded there and spoke to Mr. Steven South, who was Mr. White's supervisor.

Mr. South saw a male subject with a long sleeved blue shirt and a female with a gray tank top walking in the area asking people for money and acting suspicious. He said he watched the two people walk across Highway 111 and go into the woods.

So, the police went over there, and they saw [Petitioner] and the co-defendant, Ms. Brindley, sitting in the woods. It appeared to them like they were basically living there.

They asked them to come out of the woods. They eventually did. Both subjects appeared to be under the influence; twitching, eyes glassy, very uncoordinated. They were found to be in possession of items that had been taken during the auto burglary.

The police approached their little encampment down there, and they found a backpack. The backpack contained items that were consistent with the manufacture of methamphetamine. There was lighter fluid there, there was Draino, and there were coffee filters with residue. There was a pool pH test kit. There were coffee filters that tested positive for ephedrine, and there were cold packs that at least one of them was open and hadn't had the contents removed; therein, being the initiation of the process to manufacture methamphetamine.

It was also noted that the bottle of Draino was sent the Tennessee Bureau of Investigation Crime Lab, and it tested positive for methamphetamine. Trial counsel made the following statement to the trial court concerning the proof:

In addition to that, I would state to the Court that there was a body camera video from Officer Trivett, that's Trivett's report that the general was reading from, depicting not only the encounter with the encampment, but also the interview of the people at the car wash where the truck had been broken into. And I've had an opportunity to view all of that and discuss it with my client.

**Post-Conviction Hearing**

Petitioner identified a chart that trial counsel prepared for him concerning his charges to explain the minimum and maximum sentence Petitioner was facing for each

felony charge. The chart indicated that all three of Petitioner's felony charges required consecutive sentencing because they occurred while Petitioner was released on bond. Petitioner understood that he faced a sentence of up to forty-eight years if his case went to trial. He testified that trial counsel advised him to accept the plea offer because "that was the best deal I was going to get on this case with my prior charges and things [.]" Petitioner also said, "To my understanding of it, you know, being with my convictions and stuff, that a trial pretty much wasn't - - it wasn't going to be an option in this situation."

When asked why he decided to accept the plea offer, Petitioner testified:

Uh, I had come back to court - - I was at court once that day, left, and went back. They called me back up here, and he said that, that they was going to give me a one time deal for that day of 13 [sic], at Range 60. And I was basically talking to them about, you know, if - - what, what was the best option, what I'd get? He said that was the best. That was it.

Petitioner testified that he and trial counsel never reviewed discovery in his case, which included audio and video recordings. He later testified that he had received discovery, but he did not see the audio or video recordings.

On cross-examination, Petitioner agreed that he had been through the guilty plea process in several of his prior felony convictions. He admitted that he had eight prior felony convictions and multiple misdemeanor convictions. He also agreed that he was familiar with the court system and knew how everything worked. Petitioner agreed that he was charged with multiple offenses in the present case and only pled guilty to the initiation of methamphetamine and auto burglary. His co-defendant, Cora Brindley, also plead guilty to charges of her own. Petitioner testified that Ms. Brindley wanted to testify on his behalf at trial but trial counsel told him that it would not matter because "they didn't want her, they wanted me." Petitioner also thought that she would have testified on his behalf even though her attorney probably would have advised her against doing so.

Petitioner agreed that if his case had gone to trial, he faced a sentence of more than the fourteen years that he received as a result of the plea agreement. He further agreed that a multitude of other charges were dismissed as a result of his guilty plea. Petitioner admitted that he was on bond for felony charges when he committed the offenses in this case, which would have resulted in consecutive sentencing.

Petitioner acknowledged that the trial court reviewed his charges, the class of each felony, and potential sentences with him at the guilty plea submission hearing. He specifically told the trial court that trial counsel had done a good job and had provided him with discovery. Although Petitioner faced a forty-eight year sentence but received a fourteen-year sentence, he felt that the fourteen-year sentence was too much because trial

counsel did not show him the proof against him. Petitioner said that trial counsel did not "do anything for me besides, you know, just telling me, 'Hey, look, you need to take this deal. This is the best that you're going to get.'"

Petitioner testified that trial counsel never came to the jail and showed him the discovery, and they never talked about it. He said that trial counsel only wrote out the chart, which took approximately five minutes while they were in booking at the jail. Petitioner felt that trial counsel did not "do the best he could do for me. He didn't even get close to it." Petitioner acknowledged that trial counsel gave him a copy of discovery. However, he said that he did not recall reviewing any audio or video recordings with trial counsel.

Petitioner's mother, Lou Ellen Ellert, testified that Petitioner sometimes had difficulty understanding things. She said that Defendant was schizophrenic which "affects him in a lot of ways actually." Ms. Ellert testified that she attempted to speak with trial counsel about Petitioner's cognitive difficulties, but he "blew [her] off [.]" She thought trial counsel was "very arrogant." Ms. Ellert testified that the court "already had their mind made up what they wanted to do to start with. There's always been a problem here between the Court and my son." Ms. Ellert testified that the trial court always waited until she was gone "before they would talk [Petitioner] into taking a sentence [.]" She also said that "they would go and bring him back into the court and get him to plead guilty by scaring the hell out of him."

Trial counsel testified that he met with Petitioner and reviewed discovery with him. He said, "The two primary cases that he pled to, we had some audio and video recordings, as well as numerous, numerous documents, consisting of police reports, and lab reports, and the (unintelligible) reports that you get in methamphetamine-related cases, those types of things." Trial counsel testified that he went to the jail on July 8, 2016, after receiving discovery and reviewed everything except the audio and video recordings with Petitioner at that time. He also reviewed with Petitioner a plea offer that he had received from the State. Trial counsel noted that he may have reviewed the audio and video recordings "in between then and the date when he eventually pled in September [.]" When asked if he could dispute Petitioner's claim that he did not review the audio and video recordings with Petitioner, trial counsel testified:

> I think that's right. The - - I had - - when we were in court in September - - in September, the date that he pled, I did not anticipate it was going to be a plea that day. I had filed a motion to suppress based on an issue related to the police interaction within, initially in the methamphetamine case. And so, from my perspective, we were still ongoing; we're still litigating that and working toward a trial date. So, it would not surprise me if I had not looked at it with him yet, but I would have anticipated doing that before we had a final hearing on the motion to suppress.

Trial counsel testified that the prosecutor indicated it was his intention to prosecute Petitioner as a Range III offender. He said that "[t]he offer out of the gate was twenty (20) years to serve at Range [III]." Trial counsel did not recall if Petitioner's co-defendant was going to testify on his behalf at trial. He noted that it appeared the State was more interested in prosecuting Petitioner than his co-defendant. It was his understanding that the co-defendant did not have much of a criminal record. Trial counsel said it would not surprise him if he told Petitioner something to the effect of, "It looks like you're really the one they're interested in here. I don't know that it's going to help you to have your co-defendant come in and claim something."

Trial counsel testified that Petitioner did not want to accept the State's initial plea offer of twenty years because it was too long. He told Petitioner that they would "litigate it and work it toward trial in the hopes that something other than trial would present itself as an option for him." Trial counsel testified that he would never tell someone that they could not go to trial. He said that in Petitioner's case, "up until the instant that he pled, I was working it as though we were going to try it, just based on the position that the State took initially."

On cross-examination, trial counsel testified that he met with Petitioner at least four times prior to his guilty plea. He sent Petitioner a copy of discovery after they met on July 8, 2016. He noted that Petitioner pled guilty on the date of his hearing on a motion to suppress that trial counsel had filed. Trial counsel agreed that the fourteen-year sentence that Petitioner received was less than the twenty-year offer that the State initially made. Trial counsel thought that Petitioner was the one who suggested that he would be willing to take a fourteen-year offer. He said:

> After that, I came out and talked with [the prosecutor] in the courtroom, and he indicated he'd be willing to do the fourteen (14) at 60, and I went ahead and prepared a plea form reflecting that. I think by the time I got the plea form done, [Petitioner] had already been taken back downstairs, I think that's right, and ended up coming back up, and we went over the plea form and did the plea.

Upon questioning by the post-conviction court, trial counsel testified Petitioner faced a potential sentence of up to forty-eight years. He testified:

> So, and again, looking at a copy that I have of the plea form, [Petitioner] had a "B" felony, the initiation to manufacture methamphetamine; he had a "D" felony, promotion of methamphetamine. I think those were a bond on bond circumstance, so I think both of those were mandatory consecutive. He had an auto burglary case, a felony failure to appear. Again, that one was for sure mandatory consecutive with regard to the

- 5 -

initiation and the promotion of methamphetamine. He had a DUI and paraphernalia, and assorted other misdemeanors. And so my understanding, based on the status of how all that played out, with bond on bond, if he were sentenced to the maximum on the promotion, which is a bond on bond with the initiation case, and get the maximum, that would be twelve (12). And then on the auto burglary case - - or, excuse me, on the felony failure to appear case, again, he would be looking at a maximum of six (6) on that, and that's bond on bond as well.

Trial counsel noted that Petitioner had eight prior felony convictions. He said that it was "definitely" Petitioner's wish to enter a plea.

**Analysis**

Petitioner argues that his trial counsel's performance was ineffective for failing to adequately consult with him prior to entering his guilty plea. More specifically, Petitioner asserts that he did not review the "entire discovery file in the case and there was very little [consultation] regarding what [Petitioner] was actually pleading to as part of the agreement." We disagree.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687; see *Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e. a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

In addition, in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as state in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P 11(c). The trial court looks to the following factors in determining whether the defendant's guilty pleas were knowing and voluntary:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Our supreme court has stated that:

> [T]he petitioner for post-conviction relief [] has the burden of proving his factual allegations by clear and convincing evidence. *Calvert v.*

- 7 -

*State*, 342 S.W.3d 477, 485 (Tenn. 2011) (citing *336 Tenn. Code Ann. § 40-30-110(f) (2006) and Tenn. Sup. Ct. R. 28 § 8(D)(1)). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009). The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert*, 342 S.W.3d at 485. A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with no presumption of correctness. *Id.*; *Dellinger*, 279 S.W.3d at 294; *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008).

*Smith v. State*, 357 S.W.3d 322, 335-36 (Tenn. 2011).

We begin our analysis with the post-conviction court's findings. Following the evidentiary hearing, the post-conviction court found that Petitioner was not entitled to relief:

> The Petitioner asserts that his attorney, [ ], did not properly advise him of the ramifications of his plea agreement. [Petitioner] testified that [trial counsel] did not meet with him, did not go over discovery and did not properly represent him leading to the entering of his plea in these matters. [Petitioner's] testimony is in direct conflict with both [trial counsel's] testimony and the transcripts of said plea entered as an exhibit at the post-conviction hearing.
>
> After hearing testimony from both the Petitioner and [trial counsel], and considering all the evidence at said hearing, this Court credits the testimony of [trial counsel] as to any conflicts/disputed facts between the two. After listening to the evidence presented, this Court cannot say that the evidence establishes by a clear and convincing level that [trial counsel] failed to advise his client properly under prevailing professional norms as judged within the wide range of reasonable professional assistance. [Trial counsel] testified that he met with [Petitioner] and went over the plea agreement in detail before the plea was entered. During the plea hearing, the Petitioner indicated that he had met with [trial counsel] and that he understood the nature of the plea. This Court also finds that after reviewing the transcripts from the August 23rd plea, that [trial counsel] went over all aspects of the plea agreement on the record with the Petitioner in great detail. It is very clear to this Court that the Petitioner was aware and understood the ramifications of said plea by his own admissions during the plea colloquy on August 23rd, 2016. As to this alleged issue, the Court finds it without merit.

The record in this case does not preponderate against the post-conviction court's factual findings. Trial counsel testified that he met with Petitioner at least four times before the guilty plea was entered, and he reviewed discovery with him. Trial counsel also made a chart for Petitioner to explain the potential forty-eight year sentence that Petitioner faced if his case went to trial due to the fact that Petitioner was on bond when he committed some of the offenses, which would require mandatory consecutive sentencing if he was found guilty of all the offenses. Petitioner acknowledged that he received a copy of discovery and that trial counsel reviewed the chart with him, and he was aware of the potential sentence if convicted at trial. Trial counsel noted that up until the instant that Petitioner pled guilty, he was "working it as though we were going to try it [.]" He thought that Petitioner was the one who suggested that he would be willing to accept a fourteen-year plea offer, and trial counsel spoke with the prosecutor who agreed to an offer of fourteen years at sixty percent. Trial counsel testified that he reviewed the plea offer with Petitioner, and the transcript of the guilty plea submission hearing reflects that trial counsel also went over each aspect of the guilty plea with Petitioner on the record at the hearing. At the hearing, Petitioner told the trial court that he understood the nature and terms of the plea agreement because he had discussed the agreement with trial counsel.

Petitioner asserts that trial counsel "was unsure if he had reviewed the video or audio evidence with [Petitioner]." He further argues that his guilty plea was not "voluntarily made, as he had not reviewed the entire discovery file in the case [.]" As pointed out by the State, Petitioner has not demonstrated that but for the failure to review the audio and video recordings, he would not have pled guilty and would have gone to trial. The audio and video recordings referenced by Petitioner were apparently taken from the body camera of the officer who arrested him. Petitioner did not introduce these recordings at the post-conviction hearing, and he has not alleged in his argument on appeal how these audio and video recordings would have affected his decision to plead guilty. We further note that at the guilty plea submission hearing, trial counsel told the trial court that there was a body camera video from Officer Trivett, "depicting not only the encounter with the encampment, but also the interview of the people at the car wash where the truck had been broken into." He also told the trial court that he had an opportunity to "view all of that and discuss it with [Petitioner]."

Petitioner has not shown that trial counsel rendered deficient performance by failing to adequately consult with him prior to Petitioner entering the guilty pleas. The post-conviction court specifically found that trial counsel's testimony was credible. This court will not re-weigh or re-evaluate the credibility determinations made by the post-conviction court. All questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court, not the appellate courts. *Moman v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Petitioner has failed to show that his guilty plea was not knowingly,

voluntarily, and intelligently made. In our de novo review with no presumption of correctness to the trial court's ruling, we conclude that Petitioner failed to establish either deficient performance or prejudice if there had been deficient performance by trial counsel. Accordingly, Petitioner is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.


_____
THOMAS T. WOODALL, JUDGE